Good morning, Your Honors. I'm Kathleen Hartnett for Appellant Coinbase. I will seek to reserve three minutes for a rebuttal. The District Court erred in denying Coinbase's motion to compel arbitration. The delegation clause in Coinbase's user agreement clearly and unmistakably requires an arbitrator to determine whether a particular dispute between Coinbase and its users is arbitrable. The arbitrator may decide that this dispute belongs in arbitration. The arbitrator may decide to send this dispute back to court. But it is for the arbitrator, not the court, to decide that question. The District Court recognized that the Coinbase user agreement delegates questions of scope, that is, whether a particular dispute is covered by the arbitration agreement, to the arbitrator. And this is at ER 12, which is the order under review. However, the District Court then impermissibly went on to decide the question of arbitrability itself, framing the issue as whether the user agreement and the arbitration clause in that agreement was superseded by the official rules of the Dogecoin sweepstakes. This was error. What the District Court called a supersession analysis was, in fact, an analysis about the scope of the arbitration provision, and that is for the arbitrator. That the Dogecoin official rules did not disrupt the otherwise clear and unmistakable delegation in the user agreement flows directly from this court's ruling in Mohammed v. Uber. Now, let me ask you a question. Could anyone just participate in the lottery? Yes, Your Honor. There are two ways of entering the lottery. You could be a Coinbase user and opt in and make a purchase or sale, or you could fill out an alternative method of entry, and that could be not limited to Coinbase users. Although, to claim a prize for you to win, you would have to make a Coinbase account in order to claim the prize. And so part of the point we made below, and I think part of the point why there's even, like, there's even less of a purported conflict here between the arbitration provision in the user agreement and the venue provision in the Dogecoin sweepstakes, is that that provision does two types of work. It does work for people who are sweepstake entrants who are not Coinbase users. They will be covered by that venue provision. And for any Dogecoin sweepstakes entrant who is a Coinbase user, that would be able to reconcile as being a place that would be the venue for any enforcement of an arbitral award. And that would be... I'm still curious about what happens. You just said that if you weren't a member of Coinbase and you just sent in the 3x5 card, you know, some random person, and their card was drawn out of luck of the draw, in order to collect their winnings, they would have to join Coinbase? I mean, they have to become a member, and then they would be bound by the arbitration agreement? Yes, Your Honor. That's how it works? Yes, and so the people that would have the possible claim that would be sweepstakes entrants who were not winners and who believe there was some problem with the sweepstakes, it's our position that the sweepstakes rules would require those people to go to court because they didn't have a preexisting agreement with Coinbase to arbitrate all disputes with the company, and they wouldn't have become a user in the interim. And this doesn't present the situation of any person who was a non-user and then bound as a winner. These are all four plaintiffs or Coinbase users before they entered the sweepstakes. So some people would have to go to court, and some people would have to go to arbitration. Yes, Your Honor. So if you are involved in the sweepstakes and you see this language of the forum selection, don't you become really confused about whether you're supposed to go to the California courts as opposed to arbitration? Your Honor, our position is that the reasonable user would have before them their Coinbase user agreement, which makes entirely clear that they're going to go to arbitration for all disputes, and the plaintiffs here didn't dispute that, but for the official rules, this dispute should be an arbitration. And you would look at the sweepstakes... Then the normal user involved in this would say, oh, we're now in a sweepstakes. And we're in a sweepstakes not just with other Coinbase members, but we're also in a sweepstakes with people who sent in little cards. And in fact, when you start looking at the rules in regard to Coinbase, there's the addition of another party, which is Marden. And so you think to yourself, this sweepstakes involves totally different parties than where the arbitration clause is. They involve Marden. They involve Coinbase. They involve other people who were not Coinbase contributors. All of these people are involved in the sweepstakes. So how can you say, if there are totally different parties involved in the sweepstakes,  should necessarily be applied in a way that only some of the members of the sweepstakes are a part of? Your Honor, I thank you for the question. I think the point here is that that actually is a question for the arbitrator to decide. Because what we have here, and no one is... There is a valid... You know, we heard discussion earlier about, do we have a valid arbitration agreement? Here we have a valid arbitration agreement between all four plaintiffs and Coinbase with respect to any disputes about its use of the services. And so the plaintiffs concede that, but for these official rules, we would be in arbitration. We also have a delegation clause that says that that should be decided by the arbitrator. And so the scenario you're positing... I'm sorry. You have a delegation clause which talks about the scope of the arbitration agreement. But how about to the existence of an arbitration agreement? If, in fact, there is a separate new agreement, or it's an agreement involving different parties, or it's not necessarily flowing from the original agreement, then the issue becomes not scope. It becomes the existence of an arbitration. Existence of the... Yes, Your Honor, you're correct. The Court will decide whether there is an existence of an arbitration agreement. And I submit here the Court didn't quite structure the analysis that way below, but actually did it incorrectly and for two reasons. First of all, the fundamental premise of the district court's ruling, that there was the second agreement was separate and differently binding, was that it was in conflict with the first. And that was at ER 13. The district court held the arbitration clause and the forum selection clause in the two contracts are conflicting. And that was just clearly incorrect. It was assuming that there had to be a conflict. And under Mohammed, that decision from this Court teaches to the contrary. There they said that the Court said any such conflict between a very nearly identical venue provision and a general delegation is not necessarily a conflict, that actually such a conflict is artificial. And so what I'm submitting to you, also the official rules say nothing about delegation. They're silent on that point. So the correct answer here would have been there is a valid user agreement. No one is disputing that there's a valid user agreement. No one is saying that the official rules, like all of the cases that are relied on, both below and by the plaintiffs here, have been sort of superseded by user agreement 2.0, where it's a new, integrated, complete agreement. Rather, there's a tag-on agreement with different parties, which, if anything, actually shows that that is not a supersession. And we go into this analysis in our brief, but if the Court below had done sort of an appropriate contractual analysis, it would have gone through and actually took the point that the fact that these are different parties and that there were different parties to the second contract than the first actually only underscores the validity of the first contract, because that second contract couldn't supersede or otherwise purport to amend the first. And so I think what you're getting at, and it's a fair argument and one that we believe should be made in arbitration, is that the sides can both dispute whether or not, with the arbitrator deciding, is this within the scope of the user agreement, or did there end up being some carve-out for sweepstakes disputes that's in that actually applies here or is sending us back to court. And I think that the Henry Schein case from the Supreme Court, I think, is helpful here. Not only is it a unanimous decision that makes clear you have to decide this delegation issue at the outset with laser focus, but also even if you think the underlying argument for arbitration is wholly groundless, that was the standard in that case, that's not for the Court to decide. You may think, oh, this seems like it should be something that's actually a sweepstakes rules-covered dispute. But the point we're making is there's nothing in that second set of rules that undermines the delegation clause, and the delegation clause sends us to arbitration to decide that question in the first place. And with respect, the district court did struggle with it. She said this. She found it to be a closed question or a hard question, but I think with respect, that belies the notion that there's this conflict that really drove her to think there was a problem here. And then when you actually kind of run through the actual technicalities of a true supersession analysis, the points you're making about this being separate parties actually just only underscores that that first delegation has to be enforced. And the Court has made that point that, you know, so in short, we would say that kind of Mohammed combined with the ordinary principles of contract interpretation mean that, yes, this Court gets to decide validity, but the correct answer here is there's a valid user agreement, there's a delegation clause, and we should be back in arbitration to answer the questions you're raising. I guess I want to make sure not to belabor my points, but I would just say, touching briefly on some of the arguments to try to avoid the application of Mohammed. First, there was an argument about waiver, and I think we've addressed this in the brief. We did present that case below. The arguments have become more detailed on appeal, but the Court can reach that issue regardless, and it is a valid user agreement that is preserved. They also make an argument about the Mohammed reasoning only applying within a single agreement, but I think the logic of the two provisions being inconsistent, as I kind of pointed out, is almost stronger in the context of the agreement here because there's multiple work, multiple ways in which the venue provision does work beyond just superseding an arbitration agreement. I also would just note the couple of arguments they raised for the first time on appeal. If Your Honors don't have questions, I don't need to belabor these points, but the unconscionability point was actually not just waived, but actually forfeited because below they said it was a valid arbitration agreement, and that was the premise of the District Court's ruling. And then finally, there was an argument about this not being within the FAA at all because there's not a transaction in interstate commerce, and again, that wasn't raised below, but also it would sort of blow up the whole world of online agreements to pre-commitments to arbitrate in the context of online agreements, and that's settled law. So with that, I would just say thank you for your rebuttal. Go ahead. Good morning, Your Honors. May it please the Court, David Harris on behalf of Plaintiffs Appellees David Susky, Jamie Martin, Jonas Calsbeek, and I'll begin with highlighting some key issues that the parties seem to agree on because I think a lot of the analysis here is going to flow from these few points of agreement. The first thing the parties generally agree on are the facts of contract formation. They're laid out in detail in our papers, but just to quickly summarize, some months or years before June of 2021, each of my clients created a Coinbase account, thereby clicked a button that says I ascend to the user agreement. Then months or years later, in June 2021, Coinbase and a third party together sort of digitally approached my clients to enter into a new transaction, the Dogecoin sweepstakes. And so there was a new offer, there was new acceptance, there was new consideration, and there were new terms and conditions. There's no dispute about these facts. The second thing that the parties agree on beyond the facts of contract formation are that appellees' underlying claims in the district court do constitute controversies regarding the promotion. They're within the scope of official rules paragraph or section 10. Coinbase has never argued that the claims are not controversies regarding the promotion, and so that is also undisputed. The third thing that the parties generally agree on is that there's no presumption in favor of arbitration here because the dispute between the parties is really the extent to which the official rules superseded, modified, otherwise altered the user agreements. Therefore, it goes to the... Your opposing counsel might not quite agree with that according to her argument. Maybe step back a little bit. I can say in the district court, at least, that Coinbase was expressed that ordinary principles of California contract law do apply here because it really does go to the existence issue. And then lastly, I don't think there's any dispute here that even under Mohammed, the most pro-arbitration case of the circuit, the parties are still free to create a contractual carve-out even for a clear and unmistakable delegation clause. And so those are kind of the main issues that there's really no dispute here, and from those issues are going to kind of flow the rest of my argument. So looking at the official rules agreements, there's really no dispute about what the user agreements mean. So let's look at the official rule... There's really no dispute about what the court has performed. But there's three provisions in the official rules agreements that Coinbase doesn't address at all, and we address them in our answering brief, and on reply, Coinbase does not touch them. The first provision is in official rules section 10, and after it lays out the exclusive jurisdiction clause, it also says that each entrant waives any objection to jurisdiction and venue in these courts, quote, for any reason. So that is not dissimilar from the contractual carve-out that this court recognized in Mohammed. In Mohammed, there was a provision essentially saying, notwithstanding any other term of this contract, the parties agree to litigate the enforceability of the PAGA waiver. So notwithstanding any provision of this enforceability of the PAGA waiver. Here, Coinbase essentially said the same thing, but using different words. They said, we're going to litigate controversies regarding the sweepstakes, and you can't object to litigation, quote, for any reason. So that contractual language that Coinbase and Martin came together came up with is simply not addressed by Coinbase, and I think that language is ultimately dispositive. The phrase for any reason includes Coinbase's and each appellee's pre-existing agreement to arbitrate. The second piece of contractual language from the official rules that Coinbase does not address is the inclusion in the forum selection clause of, quote, all that is related to the interpretation, performance, or enforcement of these official rules. So this is a gateway issue, not unlike the gateway issue of who decides arbitrability. The gateway issue is ultimately a question of who has jurisdiction to decide who has jurisdiction over the claims. And so here, what Coinbase and Martin Kane essentially said was that the courts will have jurisdiction to decide all that is related to the interpretation, performance, enforcement of this official rules agreement, and there's no dispute. That's what we're disputing here. We're disputing the enforceability, the meaning of the agreement. Therefore, there's a clear and unmistakable intent to delegate the gateway issue in this case to the courts. And again, Coinbase hasn't come up with anything in its papers to the contrary. The third thing from the official rules that's important and that is contrary to Coinbase's briefing is, so in Coinbase's briefing they said that the official rules do not mention the user agreements. And that's simply untrue. In an earlier part of the official rules agreements, before you get to the dispute resolution section, it says, quote, access to Dogecoin and U.S. dollar prizes will be subject to the Coinbase terms and conditions, which are the user agreements. And so, sort of the maxim, expressio unius, exclusio alterius, you know, Coinbase said for this specific act, accessing your prizes, that's subject to the terms and conditions. They didn't say that about controversies regarding the sweepstakes. They very well could have said controversies regarding the sweepstakes are subject to the Coinbase terms and conditions. And in fact, if you look at our request for judicial notice, which the district court granted, that's exactly what they did in a later sweepstakes with a different sweepstakes administrator. So, in a later sweepstakes, Coinbase hired a different sweepstakes administrator, and in the dispute section, it said disputes are subject to the Coinbase dispute resolution provisions in the user agreements very clearly. So, I think those three different provisions of the official rules agreements that Coinbase does not address at all in its briefing are dispositive of this case. And then, in terms of things that the parties have addressed, both of us, I think there's several different paths that the court could take to arrive at the correct conclusion that the parties agreed to litigate, even their gateway issues here. The first path the court could take is obviously the district court's path, the Goldman Sachs applied energetics line of cases that says, hey, when you have two separate agreements that involve the same parties, read them together, but when they're in conflict, the latter agreement, the more recent agreement controls. So, the supercession route is one route. Another route to take is the common, the well-known concept of modification, that this was a new agreement, a new economic transaction that involved new parties, as your Honor pointed out, and new consideration from both sides. So, we could do supercession, we could do modification, and we could also look at it as a carve-out, like the carve-out for paga waivers in Mohammed. The other thing I would say is that there's a strong textual argument here, and I recognize that Apelli has tried to shoot the moon a little bit on the contract evidencing a transaction argument, but there's a strong textual argument to make here that's related to that, and it actually also applies to the Walmart case that was just before us. So, if you look at Section 2 of the FAA, it says, a written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy, what? A controversy thereafter arising out of the contract, such contract or transaction. So, what FAA Section 2 addresses is an agreement to arbitrate future controversies that arise out of one of two things. Either the contract containing the arbitration provisions or the economic transaction evidenced by the contract containing the arbitration provisions. If we look at this here, this case, obviously I think the parties agree the claims do not arise out of the user agreements. They simply don't. Nor do they arise out of any transaction that is evidenced by the user agreements. There's no mention in the user agreements of any type of sweepstakes. There's one reference that says, hey, we may do some promotions in the future, but it doesn't say, you know, we're going to do a sweepstakes lottery-like pay-to-win sort of transaction. So, this entire case is really outside the scope, and it's similar with the tires. Here you have a dispute that's arising out of a service transaction that's not evidenced by the terms, the online terms. So, the online terms evidence one transaction, maybe, but they certainly didn't evidence that they were going to later enter into a separate agreement, separate economic provisions, product versus service, all that. And it's the same thing here. The user agreements were about signing up, creating a Coinbase account. The user agreements do not evidence that we were ever going to buy Dogecoin for a chance to win $300,000. And for that reason, it's simply outside the scope of the FAA Section 2. Did you respond to counsel's argument that under a recent case, Mohamed, was it Mohamed? The argument that the conflict is artificial. You need to try, that the courts should try and reconcile any potential conflict. Theoretically, you could. Counsel advanced an argument to show how they could be reconciled. There really is no conflict. Right. So, I hear, actually, what I would view as two distinct issues in the question. One is the Mohamed issue. Is the conflict artificial? And I think what makes the conflict here genuine and not artificial between the terms is the contractual language that I went through at the beginning that Coinbase doesn't address. So you have not just an exclusive jurisdiction clause, but you have a direct command that you cannot object to this jurisdiction clause for any reason. You also have the form selection clause specifically dealing with gateway issues of contract interpretation. And so I think for that reason, this is very different from Mohamed. In addition to the reasons we lay out in our briefing of Mohamed involved one transaction, one contract at one point in time, you can only have one intent. I can't have mutually exclusive intents if I enter into one contract with you in one transaction at one time. We must have one intent, not two opposite intents. Whereas here, Coinbase and each appellee may have had one intent when they first created their Coinbase accounts, but then Martin King comes into the picture, has a new business idea, and they may have a different intent. And that intent was very clearly expressed in the official rules agreements. The fact that the rules of the sweepstakes apply differently, how does that help your argument? So what I heard Council for Coinbase argue is essentially that the exact same language in official rules section 10 means different things for different entrants. If you're a mail-in, non-Coinbase user entrant, section 10 means one thing for you. If you're a Coinbase user who paid to enter, section 10 means something completely different to you. That idea that the same language means different things for different entrants is expressly precluded by the language of official rules section 10 itself, because it expressly applies to each entrant, and that's what the district court recognized. And elsewhere in the official rules agreements where Coinbase intended or Martin King intended to distinguish between different categories of entrants, they did so expressly. There's other parts of the official rules agreements where Coinbase and Martin King specify entrants who entered by mail. But does it make a difference that the people who are not involved with DogCoin before and had filed into the sweepstakes by way of that card, does it make a difference that before they can ever win according to the sweepstakes, they have to take out Coinbase cryptocurrency? I don't know the expression. I mean, the fact is, before they actually win, they have to become members, and so therefore, theoretically, they could become just like the other parties. Your Honor, I would say that is not an issue that is certainly not dispositive of the questions presented, and I'm not sure how relevant it is at all. I would say this to address that directly, though. I think at that point, you would look at one of the three clauses that Coinbase declines to address, which is the part of the contract that says access to prizes is subject to the terms and conditions. So if a non-Coinbase user wins, then signs up to accessing of my prizes is subject to the user agreements. However, you still have this clause that says controversies regarding the sweepstakes. No, that's in court. Anything further? I don't know if my colleagues have further questions. I would simply close with highlighting a maxim that the Supreme Court has really been intentional about highlighting lately, and from my perspective, the longstanding maxim of the strong federal policy favoring arbitration. They've now a couple of times said in Granite Rock, and in a more recent case of Morgan v. Sundance, all that means is that arbitration agreements are as enforceable as other agreements, but not more so. They're not more enforceable. And I would simply argue that compelling arbitration here would make the parties' original arbitration agreements more enforceable than their reform selection agreements in the official rules. Okay. Thank you. We'll hear two minutes for rebuttal. She had four? She had four. Oh, you had four. So you're good. I'll try not to use it all. That's fine. You got four. Four minutes and 17 seconds. You got it. Not a second more. So I just want to correct one thing that I think Plaintiff's counsel may have been arguing in his alternative argument not presented below, but he, I think, suggested that they had not conceded that the claims here otherwise would arise out of the user agreement. I just want to make sure to direct the Court to ER11, where the Court below really clearly set forth what the parties' lack of dispute was, and that it was like the parties do not dispute that plaintiffs agreed to the user agreement, that the user agreement is a valid arbitration agreement, that they, plaintiffs subsequently agreed to the sweepstakes official rules, and then they go on to say, this is the district court's language, plaintiffs do not dispute that their claims would fall within the coinbase user agreement had they not agreed to the official rules. And so just to be really clear, the agreement below actually was to the contrary, and that this does, in fact, arise out of the very broad coinbase user agreement. Just a couple of responses. I think, to begin with, there's nothing extreme or extraordinarily pro-arbitration about Mohammed. It's cited to a California case law about how to understand potentially conflicting venue and arbitration provisions and said there's no conflict. And so I don't think that's an extreme decision in any respect, and it's a decision that has been subsequently applied as we set forth in our briefs. And I don't think that Plaintiffs' Counsel really has a substantive response to Mohammed because there isn't one. The district court here found a conflict, and Mohammed makes clear that there is not necessarily a conflict. In the other cases that the Plaintiffs' Counsel referred to, but also that the district court cited, Goldman and Applied Energetics, all are totally different than this case because they actually applied time one. Parties had one agreement, either a background presumption of arbitration or some arbitration agreement, and then they subsequently followed that with a fully integrated final agreement between the parties that did not provide for arbitration. Here, we're left with a valid user agreement that says send it to the arbitrator to decide the question and the subsequent agreement. And our position is that that has to go to the arbitrator to work it out. That's not a separate integrated contract. There were this mention in of three provisions that we allegedly didn't respond to in our brief. I don't think that's the — these were sort of random provisions within the official rules that were mentioned in passing and are certainly not central to the plaintiff's argument. And they only reinforce the point that there are — there is a world in which the official rules apply in court to people that are non-Coinbase users. And so the provisions that were at issue I think were relevant to those folks. But I think what's even more important is that those arguments that he was making about what the — what the Section 10 may or may not mean are ones that the arbitrator in the first instance should be deciding because none of the provisions that were being cited have anything to do with disrupting the delegation clause. They weren't saying that there isn't a delegation. That would be a different case. What they were saying is this is how it would work if you end up going to court and also making the point that you have to become a user if you want to claim your prize. And finally, I would just say that at the end of the day, the venue provision in Mohammed, if you line it up with the venue provision in this case, it just shows that something that says exclusive jurisdiction in court, that was Mohammed, sole jurisdiction in court, that's our case, does not necessarily disrupt a delegation. We have a clear and unmistakable delegation. Henry Schein says the court should enforce it. We'll see what the arbitrator does if we get to arbitration, which is where we think we should be. But that's a question for another day before the arbitrator. Thank you very much. Okay. Thank you very much. Interesting arguments this morning. And with that, the case is submitted, and that ends our session for today, but also for the week. So thank you all very much.
judges: TASHIMA, PAEZ, Sessions